## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JOHNATHON REED**                                             **CIVIL ACTION**

**VERSUS**

**NO. 20-331-JWD-SDJ**

**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL SECURITY**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 14, 2022.

 

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNATHON REED** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 20-331-JWD-SDJ** |
| **ANDREW M. SAUL**<br>**COMMISSIONER OF SOCIAL SECURITY** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Johnathan Reed, seeks judicial review of a final decision of the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g), denying Plaintiff's application for a period of disability and disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Plaintiff filed a Motion for Summary Judgment (R. Doc. 11). The Commissioner filed an Opposition (R. Doc. 13). Plaintiff filed a Reply (R. Doc. 14). Having found all the procedural prerequisites met, the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you … file an action in a Federal district court …"). For the reasons assigned below, the Court **RECOMMENDS** that the decision of the Commissioner be **REVERSED** and that Plaintiff's Motion for Summary Judgment (R. Doc. 11) be **GRANTED** to the extent it seeks remand of this matter for further proceedings consistent with this ruling.

**I.    PROCEDURAL HISTORY**

On January 5, 2018, Plaintiff filed an application for benefits, alleging a disability onset date of March 28, 2017. (Tr. 197-200).[1] The claim initially was denied on May 10, 2018. (Tr. 134-36). Plaintiff filed a timely request for a hearing, which was held on June 10, 2019, at which Plaintiff, represented by counsel, appeared and testified. (Tr. 35-86, 143-44). A vocational expert, Thomas Bott, also testified at the hearing. (Tr. 71-83).

An unfavorable decision was rendered by the Administrative Law Judge on August 2, 2019 (Tr. 10-24), finding that Plaintiff was not disabled during the period of disability asserted. Plaintiff's request for review was denied by the Appeals Counsel on April 2, 2020. (Tr. 1-5). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981. The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

**II.    STANDARD OF REVIEW**

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). References to the record of administrative proceedings filed in this case are designated by: (Tr. [page number(s)]).

absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling*, 36 F.3d at 434 ("This is so because 'substantial evidence' is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.    ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act ("SSA"). *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Selders,* 914 F.2d at 618.

The Commissioner, through an ALJ, applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities … " 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

In her decision, before discussing whether Plaintiff met his burden at each of the steps, the ALJ granted Plaintiff's request to assert a closed period of disability from December 12, 2017, through February 11, 2019. (Tr. 10). The ALJ then found that Plaintiff met the insured status requirements of the SSA and that Plaintiff did not engage in substantial gainful activity from March

4

28, 2017, through February 12, 2019.[2]  (Tr. 12).  At the second step, the ALJ found that Plaintiff had the following severe impairments: multi-compartmental osteoarthritis of the bilateral knees, HIV, reactive airway disease, sciatica, obesity, anxiety, and depression.  (Tr. 13).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, considering the impairments listed in 20 CFR Part 404, subpt. P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr. 13-16).  The ALJ determined that Plaintiff has the residual functioning capacity to perform sedentary work, except that he can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs, balance, and stoop; and can never kneel, crouch, or crawl.  (Tr. 16-22).  The ALJ further determined that, while Plaintiff can relate to supervisors and peers on a superficial, occasional, work basis, he cannot have contact with the general public.  (Tr. 16-22).  At the fourth step, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Tr. 22).  The ALJ concluded that Plaintiff has not been under a disability, as defined by the SSA, from March 28, 2017, through the date of the decision.  (Tr. 24).

## IV.    DISCUSSION

In support of his request to reverse the ALJ's decision, Plaintiff argues that the ALJ applied an improper legal standard by failing to make adequate findings at Step 3 with respect to whether Plaintiff either met or equaled § 1.02(A) of the Listing of Impairments.  (R. Doc. 11-2 at 6).

### A.    Whether Plaintiff Meets the Requirements of Listing 1.02(A)

At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors.  The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA]

---

[2] March 28, 2017, was the date of onset of disability initially alleged by Plaintiff, prior to his subsequent request to claim a closed period of disability beginning December 12, 2017.

5

consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 .Ed.2d 119 (1987) (citing 20 C.F.R. § 404.1520(e)). "Impairments found in the Listings are those that the Commissioner acknowledges are so severe that they automatically preclude substantial gainful activity." *Henson v. Barnhart,* 373 F.Supp.2d 674, 684 (E.D. Tex. 2005) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). For that reason, the criteria in the Listings are "demanding and stringent." *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir. 1994). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). An ALJ is required to state sufficient reasons for an adverse determination at step three. *See Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007) (holding that "the ALJ erred in failing to state any reason for her adverse determination at step 3"). Thus, a bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review. *Id.*

Listing 1.02(A), which addresses major dysfunction of a joint or joints due to any cause, contains the following requirements:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b ….

6

The "inability to ambulate effectively" means an extreme limitation of the ability to walk, *i.e.*, an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete daily activities. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(2)(b)(1). The regulations further direct that ineffective ambulation is generally defined as the inability to ambulate without assistive devices that limit the claimant's ability to use both extremities; examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, and the inability to walk a block at a reasonable pace on rough or uneven surfaces. *Hill v. Astrue*, No. 08-168, 2009 WL 1362274, at *4 (N.D. Tex. May 13, 2009) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(2)(b)(1)).

While the ALJ, in her step three analysis, discusses all of Plaintiff's impairments found "severe" in step two, with regard to Listing 1.02(A), the ALJ found that "[t]he multi-compartmental osteoarthritis of the bilateral knee does not meet or medically equal listing 1.02(A)," thereafter reciting the requirements of Listing 1.02(A). (Tr. 13). The ALJ continues:

> The evidence of record does not support that the claimant's impairments meet Listing 1.02(A) because the evidence does not begin until November 16, 2017. (Exhibit C6F at 27) The claimant made many complaints to his treating physician about not being able to ambulate but the evidence shows he had no problems until April 2018. The record showed the claimant had some decrease in tone and bulk in his quadriceps but he had good strength in all muscle groups of the lower extremity. (Exhibit 8F at 4) Additionally, there is no evidence that the claimant required a cane or assistive device for ambulation. The claimant is able to ambulate effectively as defined in the regulations. Therefore, the severity of his impairment did not rise to the level of Listing 1.02(A).

Plaintiff here argues that the ALJ "employ[ed] purely generic boilerplate language with no evidentiary analysis and her rationale was confusing, vague, overly broad and wholly conclusory, limited to two paragraphs, the first of which included no evidentiary analysis." (R. Doc. 11-2 at 9). Plaintiff also notes that "[o]ddly, the ALJ addressed other listings in much greater detail despite the fact that [Plaintiff] only asserted § 1.02(A) and made detailed arguments regarding that listing."

7

(*Id.*). Plaintiff then asserts that he "met every element of the listing, and in both knees." (*Id.*). Plaintiff claims that, as to the requirement of a gross anatomical deformity, the April 20, 2018 findings of Dr. Jack Loupe, an orthopedist, indicated a bilateral genu varus deformity, with subluxation of Plaintiff's right patella revealed through x-rays. (R. Doc. 11-2 at 9; Tr. 436, 577). Plaintiff further argues that he has imaging indicating joint space narrowing in both knees. (R. Doc. 11-2 at 9; Tr. 436, 592). In addition, with regard to Plaintiff's ability to ambulate effectively, Plaintiff disagrees with the ALJ's determination that there is no evidence Plaintiff required a cane or assistive device for ambulation, pointing out that Plaintiff was prescribed and fitted with bilateral hinged knee braces and was observed using a cane, though concedes the cane was not prescribed by a physician. (R. Doc. 11-2 at 12; Tr. 435, 580).

Defendant, in response, first takes issue with Plaintiff's characterization of the ALJ's findings as "purely generic boilerplate language with no evidentiary analysis," arguing instead that "the ALJ's findings specifically stated the basis for finding that the relevant listing was not met." (R. Doc. 13 at 6). Defendant then asserts that because the ALJ found that Plaintiff could ambulate effectively, Plaintiff cannot satisfy the Listing criteria. (*Id.*). Thus, per Defendant, the ALJ "provided a sufficient rationale for the reviewing Federal court to understand the basis for the ALJ's step three finding regarding Listing 1.02(A)." (*Id.*).

An "ALJ is not always required to do an exhaustive point-by-point discussion ..." at each step of the disability analysis. *Audler*, 501 F.3d at 448. However, an "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process." *Jordan v. Astrue*, No. 10-1899, 2012 WL 443791, at *3 (W.D. La. Jan. 13, 2012) (citing *Audler*, 501 F.3d at 448). Here, the ALJ does provide an explanation for denial of disability at step three. Specifically, she finds that there is no evidence that Plaintiff required a

8

cane or assistive device for ambulation and that, therefore, Plaintiff is able to ambulate effectively as defined in the regulations. (Tr. 14). There is no indication in the record evidence that a physician prescribed a cane to Plaintiff. Further, ineffective ambulation is marked by the inability to use both upper extremities, meaning even the use of one cane, had it been medically-prescribed, still would not be sufficient to demonstrate ineffective ambulation. As such, the Court finds no error in this determination by the ALJ.

### B. Whether Plaintiff's Impairments Medically Equal the Requirements of Listing 1.02(A)

"If a claimant does not exhibit all of the requirements of a listed impairment, medical equivalence may be established by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment." *Carrillo v. Astrue*, No., 09-44, 2010 WL 2136438, at * 5 (W.D. Tex. May 26, 2010) (citing *Sullivan*, 493 U.S. at 531). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.*; *see also Selders*, 914 F.2d at 619; 20 C.F.R. § 416.926(b)(1)(ii) (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance); 20 C.F.R. § 404.1526(a) ("Your impairment is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment.").

Plaintiff argues that "the ALJ offered no rationale nor did she make any findings as to why the listing wasn't equaled, despite the fact that [Plaintiff] had severe pathology in both knees, whereas the listing requires involvement of only one." (R. Doc. 11-2 at 12). Per Plaintiff, the ALJ did not offer any rationale as to equivalence, instead "merely conclud[ing]" Plaintiff did not meet the listing. (R. Doc. 11-2 at 13). Further, Plaintiff correctly notes that the Commissioner, in

9

responding to Plaintiff's appeal, failed to address Plaintiff's claim of medical equivalence. (R. Doc. 14 at 1).

Here, while the ALJ makes a finding that "[t]he multi-compartmental osteoarthritis of the bilateral knees does not meet or medically equal listing 1.02(A)," the ALJ's analysis remains focused solely on whether Plaintiff *met* the listing. As discussed above, the ALJ based her step three analysis on finding that the evidence indicated that "the severity of [Plaintiff's] impairment did not rise to the level of Listing 1.02(A)." (Tr. 14). However, Plaintiff suffers severe impairment in his knees bilaterally, as found by the ALJ in step two (Tr. 13); the ALJ, however, never discusses the cumulative effect of said bilateral impairment and whether, collectively, it medically equals an impairment equivalent to Listing 1.02(A). Moreover, the ALJ does not discuss or otherwise analyze the effects of this bilateral impairment in conjunction with Plaintiff's other identified severe impairments, which include HIV, reactive airway disease, sciatica, obesity, anxiety, and depression, focusing instead on whether each individual impairment meets its specific listing. As the ALJ failed to provide any analysis of medical equivalency, the Court finds remand appropriate, as the ALJ should explicitly analyze medical equivalence in her step three determination. *See Woodbridge v. Colvin*, No. 15-485, 2016 WL 4253971, at *10 (M.D. La. July 14, 2016) (finding ALJ failed to provide analysis of medical equivalency and instructing ALJ on remand to analyze medical equivalence in his step three determination in the event he finds plaintiff failed to meet the Listing there at issue); *Persley v. Commissioner of Social Sec. Admin.*, No. 10-1761, 2011 WL 4058985, at *4 (N.D. Tex. Aug. 22, 2011) (recommending remand at step three and explaining that "[i]n his decision, the ALJ explains why Plaintiff does not *meet* medical listing 7.05 but does not discuss why Plaintiff's condition does not *equal* that medical listing.") (emphasis in original); *Mapps ex rel M.J. v. Astrue*, No. 09-2226, 2010 WL 1946662, at *14 (N.D. Tex. April 30, 2010)

10

("A failure to consider whether impairments medically equal a listed impairment is reversible error.").

## V.  RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that the decision of the Commissioner be **REVERSED,** Plaintiff's Motion for Summary Judgment (R. Doc. 11) be **GRANTED** to the extent it seeks remand of this matter, and this case be **REMANDED** for further proceedings consistent with this opinion.

Signed in Baton Rouge, Louisiana, on March 14, 2022.

*[signature: Scott Johnson]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**